John L. VAKAS, M.D., Plaintiff/Appellant; Plaintiff/Cross-Appellee,

v.

Paul RODRIQUEZ, M.D., William C. Swisher, M.D., Frederick J. Good, D.C., Betty Jo McNett, Joan Marshall, D.C., Julia Barbee, D.O., Herman H. Jones, Jr., M.D., F. Lee Doctor, D.O., Jerry L. Jumper, D.O., James A. McClure, M.D., Don L. McKelvey, D.C., Gordon E. Maxwell, M.D., Harold L. Sauder, D.P.M., James D. Bruno, M.D., Richard J. Cummings, M.D., F.J. Farmer, D.O., Helen Gilles, M.D., Dan A. Kelly, M.D., Richard A. Uhlig, D.O., James R. Croy, D.C., Rex A. Wright, D.C., The State of Kansas, and the Kansas State Board of Healing Arts, Defendants/Appellees; Defendants/Cross-Appellants.

Nos. 82-2195, 82-2476.

United States Court of Appeals, Tenth Circuit.

March 7, 1984.

Larry W. Wall, Wichita, Kan. (Gerrit H. Wormhoudt, Wichita, Kan., with him on brief), Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for John L. Vakas, M.D.

Leslie A. Kulick, Asst. Atty. Gen., Topeka, Kan. (Robert T. Stephan, Atty. Gen., Bruce E. Miller, Deputy Atty. Gen., Topeka, Kan., for The State of Kan., and Wallace M. Buck, Jr., Topeka, Kan., for Kansas State Board of Healing Arts and Individual Members of Kansas State Board of Healing Arts, with her on brief).

Before BARRETT and LOGAN, Circuit Judges, and BOHANON, Senior District Judge *.

BOHANON, District Judge.

Responding to a letter of complaint from six Coffeyville, Kansas, pharmacists, the Kansas Board of Healing Arts conducted a hearing on February 23, 1980, into certain prescription practices of Dr. John L. Vakas. At the conclusion of the hearing, a stipulation was offered to Dr. Vakas in which he would relinquish his Drug Enforcement Administration (D.E.A.) registration for one year. Dr. Vakas chose not to sign the stipulation.

The Kansas Board of Healing Arts then convened a disciplinary panel of six members which conducted a disciplinary hearing on June 20 and 21, 1981. The disciplinary panel found that Dr. Vakas used poor judgment in the over-prescribing of controlled substances. As a corrective measure the panel recommended that Dr. Vakas' license to practice medicine be revoked but that the revocation be stayed should he relinquish his D.E.A. registration for a period of one year.

---

* Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

Dr. Vakas appealed this decision of the Board of Healing Arts to the District Court of Montgomery County, Kansas. The state court ordered a new hearing to be conducted based upon a finding of procedural due process violations.

Shortly after the state court determination, the Kansas Board of Healing Arts offered to settle and dismiss the remanded action and submitted the following language in a proposed journal entry.

"That the parties hereto mutually agree that any and all differences having existed between the parties are now resolved to the satisfaction of both parties. Any and all issues existing between the parties be hereby satisfactorily resolved."

The proposed journal entry sparked numerous exchanges of letters between the legal counsel for the parties. In sum, the plaintiff rejected the proposed settlement as an attempt by the Kansas Board of Healing Arts to escape liability for unspecified civil causes of action. This conclusion was formed by Dr. Vakas despite repeated assurances by the Board that all that was intended was a resolution of the proceedings before the Board of Healing Arts.

Due to the failure to amicably resolve the parties' differences, the Board scheduled a disciplinary proceedings rehearing date of August 21, 1982.

To prevent the scheduled rehearing, Dr. Vakas instituted this federal action seeking an injunction of the proceedings. He additionally sought damages for alleged constitutional breaches by the Board and its individual members. In response to the federal action the Board voluntarily stayed the scheduled disciplinary rehearing and filed a motion to dismiss.

On August 27, 1982, the United States District Court conducted a hearing on the Board's motion. After oral argument the court granted the motion to dismiss in its entirety. The court foundationed its decision on the legal principles of abstentionism and immunity. Relying heavily on *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the court recognized the general reluctance of the federal courts to intervene in state disciplinary proceedings under the guise of constitutional review.

Dr. Vakas now appeals the district court's dismissal and alleges as a matter of law that the trial court erroneously resolved two legal issues. He alleges that there exists a private cause of action arising directly under the auspices of the Fourteenth Amendment separate from formal congressional action. Secondly, he alleges that the Board and its members acted beyond the scope of their authority in violating his constitutional rights by committing procedural errors in his original disciplinary hearing and hence cannot claim immunity.

█ Appellant Vakas also attempts to raise the issue of improper action on the part of the Board and its members in their offer to settle the dispute through the language of the proposed journal entry. However, this issue is not properly raised in a federal proceeding. As the trial court correctly recognized, this issue is but an attempt to seek federal intervention in the state disciplinary process. *See Middlesex County Ethics Committee v. Garden State Bar Assoc, supra.* There is simply no justification for this court to intervene in this manner. This is especially true upon review of the history of this litigation. It is apparent from the actions of the Kansas District Court that the safeguards of the United States Constitution were meticulously afforded Dr. Vakas in his earlier appeal of the Board's disciplinary hearing.

█ Additional issues that the appellant attempts to raise on appeal deal with the denial of injunctive relief. While these issues are also likely foreclosed by the *Middlesex* abstentionism doctrine, they need not be considered by this court. In early 1983 the parties entered into a stipulation and dismissal of the pending disciplinary action. The stipulation was substantially identical to the earlier offer of settlement by the Board. By virtue of this settlement and dismissal no case or controversy now exists on which to base legal objections to

the trial court's refusal to enjoin future disciplinary action. These issues are mooted by the agreed stipulation and dismissal, and appellate review is unwarranted. *See Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

An additional issue now on appeal is raised through a cross-appeal by the State of Kansas, the Board of Healing Arts, and the Board members in their individual capacities. The cross-appellants claim that the trial court abused its discretion in denying them attorney fees after a favorable resolution of their motion to dismiss.

### I. Private Right of Action

Appellant concedes that his claim pursuant to 42 U.S.C. § 1983 against the State of Kansas is barred by the Eleventh Amendment to the United States Constitution. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Mt. Healthy City School Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). However, appellant seeks to have the court fashion a remedy solely from the guarantees of the Fourteenth Amendment. He cites the case of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) as providing the guidance for the fashioning of such a remedy.

The concept of a private right of action has been strictly limited by the United States Supreme Court in the cases of *Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); and *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In both *Bush* and *Chappell* the Court refused to form a private right of action for federal employees and cautioned against judicial action in expanding available remedies absent congressional mandate.

■■■ An additional compelling justification for court refusal to fashion a private remedy under the Fourteenth Amendment in cases against states and their agencies are the provisions of the Eleventh Amend-

ment. Express waiver of the Eleventh Amendment by congressional action is required under the enforcement mechanism of the Fourteenth Amendment. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Where, as here, the Congress has chosen not to enact an enforcement scheme *directly* addressing the appellant's situation, the state retains its sovereign immunity.

This appeal is similar to that contained in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). As in *Paul,* Dr. Vakas "apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be [allegedly] characterized as a tortfeasor." 424 U.S. at 701, 96 S.Ct. at 1160. As the Supreme Court explained in *Paul,* there is simply no legal basis to support such an all pervasive view of the Fourteenth Amendment.

### II. Immunity of the Board

■■ In addition to a private cause of action against the State of Kansas, appellant seeks to maintain an action against the Board and its individual members for alleged breaches of his constitutional rights. The gravamen of this complaint is the state district court's finding of procedural due process violations during the original disciplinary hearing. However, it is well established that members of administrative boards who perform judicial functions are immune from damages in a 42 U.S.C. § 1983 action when acting in their judicial capacities. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Here, the Board of Healing Arts is specifically delegated such a quasi-judicial role by statute. K.S.A. 65–2801, et seq. Therefore, the issue before the trial court and on appeal is whether, as a matter of law, the Board was acting in their quasi-judicial capacity.

A facial review of the applicable statutes indicates that investigations and decisions

whether to commence disciplinary proceedings are within the quasi-judicial jurisdiction of the Board. Therefore, at least facially, the Board's actions comport with their jurisdictional authority.

■ The standard to apply in determining whether error committed by quasi-judicial officers in the course of their duties is immune from civil action is found in *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The general standard is strict and holds that immunity is absolute unless there is a "clear absence of all jurisdiction." 435 U.S. at 357, 98 S.Ct. at 1105. There is no evidence that the hearings conducted by the Board were beyond their jurisdiction. The trial court properly applied the legal doctrine of immunity in this situation.

■ As stated before, the appellant's allegations of actions allegedly undertaken by the Board outside their role as quasi-judicial officers are not matters properly before this court. The issue of defining the constitutional limits of the jurisdiction of the Kansas Board of Healing Arts is initially a matter for the State's determination. The principles of comity and federalism dictate that federal courts abstain from premature entry into state judicial construction of administrative disciplinary procedures. *Middlesex, supra.*

### III. Attorney Fees

In their cross-appeal, the State defendants contend the district court erred in refusing to award attorney fees pursuant to 42 U.S.C. § 1988. They recognize that as a prevailing defendant they may be awarded attorney fees only if appellant's underlying claim was "frivolous, unreasonable, or groundless." *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Prochaska v. Marcoux,* 632 F.2d 848 (10th Cir.1980). However, they contend such a finding was made by the court by implication. Although the trial court never made the explicit finding that the plaintiff's action was frivolous, the court made the following comment during the hearing on the motion to dismiss:

"I can only say that when I came out on the bench, certainly without any preconceived thoughts as to what I would do, but because I thought I understood the state of the law at that time, I did remind the plaintiff that I had read *Middlesex.* I would say to you ... that as of that point in time I'm not so sure the plaintiffs have read *Middlesex* as it relates to what I then said. But *Middlesex* simply says that the policies underlying *Younger v. Harris* are such that I should abstain."

Citing this statement by the court and recognizing the duty of a plaintiff to make a reasonable investigation of the *legal* basis of an action in order to prevent the filing of frivolous claims, *see Nelson v. Miller,* 227 Kan. 271, 607 P.2d 438 (1980), the cross-appellants argue that any finding other than that the plaintiff's case was "frivolous, unreasonable, or groundless" is error.

■ However, upon a full review of the record in this action, this court cannot make the observation that the plaintiff's case was *necessarily* frivolous or unfounded. Although the plaintiff was confronted with substantial opposing authority, the areas of constitutional law which he sought to explore were not without some slight legal support. While this court might personally make a different finding given the history of the case, we cannot conclude that the trial court abused its discretion.

Accordingly, the trial court's findings were proper in every respect and they are hereby

AFFIRMED.