FILED
United States Court of Appeals
Tenth Circuit

August 26, 2011

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

DINE CITIZENS AGAINST RUINING
OUR ENVIRONMENT; SAN JUAN
CITIZENS ALLIANCE,

      Plaintiffs - Appellees,

v.

AL KLEIN, in his official capacity as
Western Regional Director, Office of
Surface Mining Reclamation and
Enforcement, Denver, Colorado; OFFICE
OF SURFACE MINING RECLAMATION
AND ENFORCEMENT, a federal agency
within the U.S. Department of Interior,

      Defendants.

------------------------------

ARIZONA PUBLIC SERVICE
COMPANY,

      Intervenor,

BHP NAVAJO COAL COMPANY,

      Intervenor - Appellant.

No. 11-1004
(D. Colo.)
(D.C. No. 1:07-CV-01475-JLK)

## ORDER DISMISSING APPEAL

Before **O'BRIEN**, **GILMAN**, and **HOLMES**, Circuit Judges.[*]

---

[*] Honorable Ronald Lee Gilman, Circuit Court Judge, United States Court of
Appeals for the Sixth Circuit, sitting by designation.

The Office of Surface Mining Reclamation and Enforcement (OSM) approved an application by BHP Navajo Coal Company (BNCC) to revise the mining plan at its Navajo Mine. Diné Citizens Against Ruining Our Environment and San Juan Citizens Alliance (collectively Citizens) sought judicial review under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706. The district court concluded OSM had violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370h, in approving the application and remanded the case for further proceedings. BNCC seeks to appeal from the district court's remand order.[1] Lacking jurisdiction, we must dismiss the appeal as premature.

## I.    BACKGROUND

The Navajo Mine is a large open pit coal mine on tribal reservation lands in northwestern New Mexico.[2] BNCC operates the mine under a long-standing lease with the Navajo Nation and a surface coal mining permit issued by OSM.[3] In December 2004, BNCC filed an application with OSM to revise its approved mining plan at the Navajo

---

[1] BNCC also seeks to appeal from the district court's order denying its motion to dismiss based on, *inter alia*, Citizens' failure to exhaust administrative remedies and the statute of limitations/laches. That order by itself is not immediately appealable. *See Decker v. IHC Hosps., Inc.*, 982 F.2d 433, 435 (10th Cir. 1992) ("Where . . . the basis of the motion to dismiss is not an immunity from suit, the courts hold that an order denying the motion is not immediately appealable.").

[2] Venue was proper in Colorado under 28 U.S.C. § 1391(e) because the agency decisions at issue in this case were made by OSM's Western Regional office located in Denver, Colorado. Neither party contests venue.

[3] OSM has permitting and other authority over BNCC's mine operations pursuant to the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201-1328.

Mine to include mining in a 3,800-acre area administratively designated as "Area IV North." In October 2005, after performing an Environmental Analysis (2005 EA) and making a finding of no significant impact (FONSI), OSM approved the application.

In July 2007, Citizens filed the instant lawsuit.[4] BNCC intervened. The district court concluded OSM's approval of BNCC's application was the type of action which normally requires preparation of an Environmental Impact Statement (EIS) under NEPA rather than a less comprehensive Environmental Assessment. The court then turned to the 2005 EA, concluding it was deficient in several respects. It remanded the matter to OSM to correct the deficiencies and reassess its FONSI.[5]

OSM and BNCC appealed. OSM later dismissed its appeal. It appears OSM is currently in the process of re-analyzing BNCC's application.

## II.    DISCUSSION

BNCC attacks the district court's decision on all fronts. Citizens claim there is no final, appealable, order under 28 U.S.C. § 1291 because the district court remanded the case to OSM for further proceedings. We agree.

Our jurisdiction extends only to review of "final decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291. "The purpose of the finality requirement is to avoid piecemeal review." *Bender v. Clark*, 744 F.2d 1424, 1426 (10th Cir. 1984). "A

---

[4] BNCC's surface mining permit must be renewed with OSM every five years. In 2004, OSM renewed the permit. Citizens contested that renewal, but the district court determined the issue was mooted by OSM's re-renewal of the permit in 2009. Citizens have not challenged that determination on appeal.

[5] While noting it could require OSM to prepare an EIS, the district court determined it was more appropriate to remand the matter, permitting OSM to reconsider.

final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1156 (10th Cir. 2007) (quotations omitted). "The remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision." *Bender*, 744 F.2d at 1426-27; *see also Trout Unlimited v. United States Dep't of Agric.*, 441 F.3d 1214, 1218 (10th Cir. 2006); *Baca-Prieto v. Guigni*, 95 F.3d 1006, 1008 (10th Cir. 1996). This is often referred to as the administrative-remand rule. *See, e.g.*, *S. Utah Wilderness Alliance v. Kempthorne,* 525 F.3d 966, 970 (10th Cir. 2008); *Trout Unlimited*, 441 F.3d at 1218; *Baca-Prieto*, 95 F.3d at 1008.[6]

There is a "narrow" exception to the rule "when the issue presented is both urgent and important." *Trout Unlimited*, 441 F.3d at 1218-19. "If these two conditions are met, this court will apply a balancing test and assert jurisdiction if the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *Id.* at 1218 (quotations omitted).

In this case, although the issues may be important (an issue we need not decide), they are not urgent. Issues are urgent when the party (usually the federal agency) raising them would be foreclosed from raising them in later proceedings. *See, e.g.*, *S. Utah Wilderness Alliance,* 525 F.3d at 970 (concluding the issue was not urgent where potential intervenors can re-raise legal claims if BLM issues unsatisfactory decision on remand); *Trout Unlimited,* 441 F.3d at 1219 (the issue was not urgent where Defendants-

---

[6] As we explained in *New Mexico ex rel. Bill Richardson v. BLM*, 565 F.3d 683, 698 (10th Cir. 2009), and reiterate *infra*, the administrative-remand rule is most appropriate when the action at issue is adjudicative or quasi-adjudicative.

Intervenors can seek administrative and judicial review if dissatisfied with the Forest Service's decision on remand); *Baca-Prieto*, 95 F.3d at 1009 (appellate review was appropriate where agency would have no appeal following remand proceedings); *Bender*, 744 F.2d at 1428 (finding urgency where agency could not seek review of its own administrative decisions and therefore may be precluded from appealing after remand). Here, OSM has no interest in pursuing this appeal and BNCC is not foreclosed from re-raising (if necessary) its current issues in later proceedings or attacking any adverse decision resulting from remand. Although postponed review in this case might result in added costs, delay and uncertainty, such "inconveniences . . . do not create appellate jurisdiction where it does not otherwise exist." *Trout Unlimited*, 441 F.3d at 1219 n.2; *see also Boughton v. Cotter Corp.*, 10 F.3d 746, 752 (10th Cir. 1993) ("Although well-established rules of appealability might at times cause an action to be determined unjustly, slowly, and expensively, they have nonetheless the great virtue of forestalling the delay, harassment, expense, and duplication that could result from multiple or ill-timed appeals.") (quotations omitted).

In opposing dismissal, BNCC principally relies on our decision in *New Mexico ex rel. Bill Richardson v. BLM*, 565 F.3d 683 (10th Cir. 2009), but it is inapposite. That case involved the BLM's decision to amend the Resource Management Plan for New Mexico's Otero Mesa to allow fluid mineral development and its later grant of an oil and gas lease on a portion of those lands. The district court found in favor of the BLM as to the claims pertaining to the amended Resource Management Plan, but concluded the BLM had violated NEPA in failing to conduct a site-specific environmental analysis prior

to issuing the oil and gas lease. It directed the BLM to prepare such analysis if it wished to execute the lease. The State of New Mexico, a coalition of environmental groups, and an organization promoting the interests of oil and gas producers in the State appealed. The BLM argued we lacked jurisdiction under the administrative-remand rule. We disagreed for two reasons. First, the administrative-remand rule is "most appropriate" when the agency has acted in an adjudicative capacity, *i.e.*, when the agency has adjudicated rights. 565 F.3d at 697-98. Because the BLM's decision to amend the Resource Management Plan was a policymaking decision, it was acting in a quasi-legislative, not adjudicative, capacity. *Id.* at 698. Second, we determined the district court's order did

> not square with the traditional notion of a "remand," wherein the reviewing court returns an action to a lower court for further proceedings. The court's order did not require BLM to recommence a proceeding, or indeed to take any action at all--it simply enjoined BLM from further NEPA violations. If [BLM] wishes to allow oil and gas leasing in the plan area it must undertake additional analysis based on the district court's memorandum opinion, but it retains the option of ceasing such proceedings entirely.

*Id.* at 698.

Here, to the contrary, OSM's approval of BNCC's application was quasi-adjudicative because it settled BNCC's right to revise its mining plan to include mining in Area IV North. *See id.* at 699 n.17 (stating an agency's issuance of a permit "falls closer to the traditional concept of adjudication than the resource management plan process at issue here because it settles the rights of specific parties"). And, unlike in *Richardson*, the district court specifically remanded this case to OSM to conduct further proceedings consistent with NEPA.

Finally, BNCC argues Citizens are estopped from claiming the district court's order is not final or appealable because they made the opposite argument in a motion for summary decision before the United States Department of Interior's Office of Hearing and Appeals (OHA).[7] This argument lacks merit because "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant [and] principles of estoppel do not apply . . . ." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (citation omitted); *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 178 (1988) (a court "must independently determine as a threshold matter that [it has] jurisdiction").

APPEAL DISMISSED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[7] When BNCC filed its December 2004 application to revise its mining plan to include mining in Area IV North, it also proposed realigning Burnham Road, a public road traversing a portion of the Navajo Mine. OSM's approval of the application was conditioned on, among other things, BNCC following OSM's regulatory procedures for relocating a public road prior to disturbing Burnham Road. The district court concluded the realignment of Burnham Road was a "connected action" to BNCC's revision of its mining plan and therefore NEPA required both actions to be addressed in the same environmental impact analysis. Prior to the district court's decision, BNCC had applied for and received OSM's approval to realign Burnham Road. Citizens challenged that approval with the OHA. In their motion for summary decision with the OHA, Citizens argued the OHA should vacate OSM's approval of the realignment because the district court in this action had already determined the Burnham Road realignment was a connected action to the Area IV North mine expansion and therefore must be addressed in the same environmental impact analysis. They based their argument on principles of collateral estoppel and res judicata.